IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21376-CIV-GRAHAM/O'SULLIVAN

LILLIE MAE WYNN-TOBLER and
JOE TOBLER,

    Plaintiffs,

v.

ACTION FINANCIAL MORTGAGE
CORPORATION, a Florida Corporation,
MANUEL TORRES, a Florida resident,
SANDRA V. TORRES, a Florida resident,
and JUAN CARLOS HERNANDEZ,
a Florida resident,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

THIS MATTER is before the Court on the plaintiffs' Emergency Motion for a Temporary Restraining Order and Motion for Preliminary Injunctive Relief ("Motion for Preliminary Injunctive Relief") (DE # 48, 1/11/07)[1] and the defendants' Motion to Dismiss Plaintiffs' Emergency Motion for a Temporary Restraining Order and Motion for Preliminary

---

[1] On January 11, 2007, the plaintiffs filed their Emergency Motion for a Temporary Restraining Order and Motion for Preliminary Injunctive Relief (DE# 48). On January 12, 2007, the Court granted the plaintiffs' request for a temporary restraining order pursuant to the parties agreement. See Order (DE# 50, 1/12/07). Accordingly, this Report and Recommendation addresses the second portion of the plaintiffs' motion, their request for preliminary injunctive relief.

Injunctive Relief for Lack of Jurisdiction or in the Alternative, Response Thereto and Incorporated Memorandum of Law ("Defendants' Motion to Dismiss") (DE# 60, 2/16/07). This matter was referred to the undersigned by the Honorable Donald L. Graham pursuant to 28 U.S.C. § 636(b)(1)(A). An evidentiary hearing was held on March 14, 2007. Upon careful consideration of the testimony, pertinent filings and exhibits, the record, argument of counsel and the applicable law, the undersigned respectfully **RECOMMENDS** that the plaintiff's Motion for Preliminary Injunctive Relief be **GRANTED** and that the defendants' Motion to Dismiss be **DENIED**.

## INTRODUCTION

The plaintiffs seek to enjoin defendant Sandra Torres from evicting the plaintiffs from their home, located at 3381 NW 178th Street, Miami, Florida (hereinafter "the subject property"), and from discontinuing mortgage payments on the subject property. See Motion for Preliminary Injunctive Relief (DE # 48 at 8, 1/11/07).

The plaintiffs allege the following claims against the defendants: Fair Housing Act violations, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") violations, Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA") violations, common law conversion, common law fraud, common law negligence, fraud in the inducement, constructive trust and unjust enrichment. See Second Amended Complaint (DE# 28, 10/26/06). The defendants have filed a counterclaim against the plaintiffs for abuse of process and breach of contract (DE# 41, 12/15/06).

On January 11, 2007, the plaintiffs filed their Emergency Motion for a Temporary Restraining Order and Motion for Preliminary Injunctive Relief (DE# 48). The parties

agreed to a temporary restraining order enjoining defendant Sandra Torres from commencing eviction proceedings until the Court rules on the plaintiffs' Motion for Preliminary Injunctive Relief. See Order (DE # 50, 1/12/07).

On February 16, 2007, the defendants filed their Motion to Dismiss (DE# 60). The plaintiffs filed their Opposition to Defendants' Motion to Dismiss and Reply in Support of Motion for Preliminary Injunction (hereinafter "Plaintiffs' Opposition") (DE# 64) on February 23, 2007.

An evidentiary hearing on the plaintiffs' Motion for Preliminary Injunctive Relief was held on March 14, 2007 at which the parties presented live testimony and submitted documentary evidence for the Court's consideration. Lillie Mae Wynn-Tobler and Joe Tobler testified on behalf of the plaintiffs and Manuel Torres and Juan Carlos Hernandez testified on behalf of the defendants.

## FINDINGS OF FACT

### A.   The Plaintiffs

The subject property was purchased by Mrs. Tobler in 1996. Presently, the plaintiffs live at the subject property with two minor children. In 1999, Mrs. Tobler suffered from depression and experienced a nervous breakdown. She is presently unable to work. Mrs. Tobler takes Zoloft, Temazepam and Valium for her depression, insomnia and anxiety. Mrs. Tobler was on medication when she testified at the evidentiary hearing. If the plaintiffs are evicted from the subject property, they and their children will not be able to live with family or friends. The plaintiffs could contribute between $500 and $600 toward rent payments.

3

### B. The Foreclosure Action

In February 2005, the plaintiffs were served with a summons, complaint for foreclosure and a notice of lis pendens for failure to make payments on their Ameriquest mortgage. See Defendants' Ex. 2. Shortly thereafter, the plaintiffs tried to obtain refinancing through New Chance, LLC (hereinafter "New Chance") to stop the foreclosure action. The plaintiffs contacted New Chance because they had received New Chance advertisements at their home.

The plaintiffs executed and notarized an Agreement Letter and an Assignment of Proceeds with New Chance on February 14, 2005. However, before returning the executed and notarized documents to New Chance, the plaintiffs wanted to determine the legal significance of these documents. A third party directed the plaintiffs to Action Financial Mortgage Corp. (hereinafter "Action").

### C. Action Financial Mortgage

In February 2005, the plaintiffs met with defendants Manuel Torres and Juan Carlos Hernandez at Action. Mr. Torres and Mr. Hernandez are licensed mortgage brokers. Mr. Hernandez reviewed the New Chance documents and told the plaintiffs that New Chance was trying to take their home. Mr. Hernandez advised the plaintiffs that New Chance was not a mortgage lender and that Action was. Mr. Torres and Mr. Hernandez obtained a credit report for Mr. Tobler. Mr. Tobler's low credit score did not qualify the plaintiffs for refinancing.

The plaintiffs also attempted to refinance their mortgage through Charter Mortgage Corp., but were denied on February 17, 2005. See Defendants' Ex. 14.

4

At some point, the plaintiffs returned to Action. Mr. Hernandez initially told Mrs. Tobler that their new monthly payments would be $900.00 per month and that the new mortgage would be for $120,000.00. The plaintiffs' monthly mortgage payments with Ameriquest were approximately $1,125.43. See Defendants' Ex. 2. Mr. Torres later told the plaintiffs that the new mortgage would be for $130,000.00 because of outstanding payments and penalties and that the plaintiffs would have to pay $1,500.00 per month. Mrs. Tobler expressed concern about meeting these new monthly payments. However, Mr. Hernandez discussed with Mrs. Tobler that she would be receiving some money to pay off her credit card debt and, thus, be able to meet the increased monthly payments. The plaintiffs were also told that they could improve their credit score by renting the subject property for a year and could obtain a new mortgage at the end of the lease period and repurchase the property for $130,000.00. Mr. Torres told the plaintiffs that their names could not be on the initial new mortgage or title because they had bad credit.

On April 27, 2005, the plaintiffs executed the Sale and Purchase Agreement. See Plaintiffs' Ex. 2. On May 11, 2005, the plaintiffs executed a Quit Claim Deed to Mrs. Torres. See Defendants' Ex. 6. On that date, Mr. Torres wired $13,685.30 from his personal bank account to Ameriquest to pay the plaintiffs' mortgage arrearages and stop the foreclosure. See Motion to Dismiss (DE# 60 at ¶12, 2/16/07). The foreclosure sale of the subject property was scheduled for May 12, 2005. Id.

The parties closed on the subject property on June 6, 2005. On that date, the plaintiffs executed the HUD Settlement Statement, Disbursement Instructions and

Residential Lease. See Plaintiffs' Ex. 3 - 5. Mrs. Tobler did not read the documents she signed because she trusted the defendants. The plaintiffs believed their home was sold to Mrs .Torres for $130,000.00. Mrs. Tobler did not know that the new mortgage on their home was $165,000, that the subject property was actually sold for $185,000.00, or that Mrs. Torres received cash and credit of approximately $39,961.42 ($58,646.72 less $13,685.30 in reimbursement for arrearages less $5,000 paid to the plaintiffs) in purchasing the subject property.

### D. HUD Settlement Statement

According to the HUD Settlement Statement, the proceeds from the sale of the subject property were $58,646.72. See Plaintiffs' Ex. 3. Of this amount, $26,481.37 were used to pay Mrs. Torres' down payment and closing costs on the subject property.[2] Of the remaining $32,165.35, $13,685.30 were used to reimburse Mr. Torres for paying the mortgage arrearages and $13,480.05[3] were placed in the Torreses' joint bank account, in the event the plaintiffs defaulted on their lease payments. The plaintiffs received only $5,000.00 from the sale of their home. See Disbursement Instructions, Plaintiffs' Ex. 4

In addition to obtaining title to the subject property, Mrs. Torres realized a financial gain of **$39,961.42** ($58,646.72 less $13,685.30 in reimbursement for

---

[2] Mrs. Torres did not use any of her own money to purchase the subject property with the exception of paying for the appraisal and inspection fees which totaled less than $1,000.00. Instead, she used the equity in the subject property to cover her $18,000.00 down payment and closing costs.

[3] Plaintiffs' Ex. 7 at 2.

6

arrearages less $5,000 paid to the plaintiffs) in purchasing the subject property.

### E.  The Lease Payments

Under the lease agreement, the plaintiffs would make monthly lease payments to Mrs. Torres in the amount of $1,544.00 starting on August 1, 2005. The plaintiffs made the first three lease payments before falling behind on their payments. Although $13,480.05 had been earmarked to cover the lease payments in the event the plaintiffs defaulted, the Torreses' sent an eviction notice in January 2006, after the plaintiffs had failed to make three lease payments (November 2005, December 2005 and January 2006). See Motion to Dismiss (DE# 60 at ¶ 21, 2/16/07).

### F.  The HUD Complaint and Eviction Notices

At some point, Mrs. Tobler attempted to repurchase the home through Quick Loans and learned that the mortgage on the subject property was $165,000.00, not $130,000.00.

In February 2006, the plaintiffs filed a discrimination complaint against the defendants with HUD. The plaintiffs learned through HUD that the proceeds from the sale had been $58,648.72.

Mrs. Torres did not pursue her initial eviction notice. In January 2007, the plaintiffs received a three day notice from Mrs. Torres demanding $15,440.00 in rent payments. As of the date of the evidentiary hearing, the plaintiffs have not made their lease payments to Mrs. Torres for 17 months. The Torreses have not made the February 2007 and March 2007 mortgage payments.

## **STANDARDS OF REVIEW**

**A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). The absence of subject matter jurisdiction may be raised at any time during the case and may be based on the court's review of the evidence. See Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."). Lack of jurisdiction cannot be waived, and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation.  Tuck v. United Services Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988), cert. denied, 489 U.S. 1080 (1989).

Attacks on this Court's subject matter jurisdiction may be either facial or factual. Fed. R. Civ. P. 12(b)(1). Facial attacks "require [ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980) (internal citation omitted). Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id.

Since the parties have submitted matters outside the pleadings and the undersigned has considered same, the undersigned will treat the defendants' Motion to

8

Dismiss as a factual attack on subject matter jurisdiction. See Simmons v. U.S., No. 300CV1316J99MMH, 2005 WL 1243760, 6 (M.D. Fla. May 25, 2005).

**B.     Preliminary Injunction**

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." Northeastern Fla. Chaptter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1284 (11th Cir. 1990). A preliminary injunction may be granted only if the moving party establishes four elements: (1) a substantial likelihood of success on the merits; (2) an immediate and irreparable injury absent injunctive relief; (3) a threatened harm to the plaintiffs that outweighs any injury the injunction would cause to the nonmovant and (4) no adverse effect to the public interest. South Dade Land Corp. v. Sullivan, 853 F. Supp. 404, 406 (S.D. Fla. 1993) (citing United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983)). A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to the four [elements]." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

### THE DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

The defendants move to dismiss for lack of subject matter jurisdiction. See Motion to Dismiss (DE# 60, 2/16/07). The defendants argue that "[t]he [c]ounty [c]ourts in Florida have exclusive jurisdiction over proceedings relating to the right of

9

possession of real property." Id. at 8. The plaintiffs respond that they are "not litigating matters of landlord tenant law in this action," but are asking the Court to maintain the status quo until this case is resolved. See Motion for Injunctive Relief, DE# 60 at 3.

The defendants' jurisdictional argument lacks merit. A district court is not divested of subject matter jurisdiction merely because a preliminary injunction concerns the possession of real property. See Cuban Museum of Arts and Culture, Inc. v. City of Miami, 766 F.Supp. 1121 (S.D. Fla.1991) (enjoining defendant from evicting the plaintiffs and denying them the continued use and possession of the subject premises). Accordingly, the undersigned recommends that the defendants' Motion to Dismiss be **DENIED**.

## THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This Court has inherent authority to enjoin defendant Sandra Torres from commencing eviction proceedings against the plaintiffs and from discontinuing the mortgage payments on the subject property. See ITT Comty. Dev. Corp. v. Barton, 569 F.2d 1351, 1359 (5th Cir. 1978) (noting that "federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion.").[4] The plaintiffs have demonstrated: (1) a substantial likelihood of success on their FDUTPA claim; (2) that they will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to the plaintiffs outweighs the damage the proposed injunction may

---

[4] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

cause the defendants and (4) that the injunction issued would not be adverse to the public interest. South Dade Land Corp. v. Sullivan, 853 F. Supp. 404, 406 (S.D. Fla. 1993) (citation omitted). As such, the undersigned recommends that the plaintiffs' Motion for Preliminary Injunctive Relief be **GRANTED** as explained below.

### 1.   Substantial Likelihood of Success

The undersigned finds that the plaintiffs have demonstrated a substantial likelihood of success on the merits of their FDUTPA claim, Fla. Stat. § 501.201, et. seq.[5] To demonstrate a substantial likelihood of success on the merits, the plaintiffs must make a showing of likely or probable, but not certain, success at trial. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1232 (11th Cir. 2005).

The FDUTPA was enacted "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.201 (2005). The Florida Supreme Court has held that the FDUTPA "applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract." PNR, Inc. v. Beacon Prop. Mgt. Inc., 842 So.2d 773, 777 (Fla. 2003).

---

[5] Although the plaintiffs raise multiple claims against the defendants, the plaintiffs need only show a substantial likelihood of success on the merits on one claim. See Schiavo ex rel. Schindler v. Schiavo, 357 F.Supp.2d 1378, 1383 (M.D. Fla. 2005), aff'd 403 F.3d 1223 (11th Cir. 2005) (noting that "[t]o obtain temporary injunctive relief, [the plaintiffs] must show a substantial likelihood of success on at least one claim.").

In order to prevail on a claim under the FDUTPA, a party must show: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. See Marino v. Home Depot U.S.A., Inc., No. 06-80343-CIV, 2007 WL 201260, 7 (S.D. Fla. Jan. 24, 2007) citing Chicken Unlimited, Inc. v. Bockover, 374 So.2d 96, 97 (Fla. 2d DCA 1979).

In Cummings v. Warren Henry Motors, Inc., 648 So.2d 1230, 1233 (Fla. 4th DCA 1995), a Florida court held that a "'bait and switch' tactic [wherein the defendant] represent[ed] the transaction to be a sale in which [the plaintiff's] car would be paid off at the end of sixty months when in fact [the defendant] had [the plaintiff] sign a lease of sixty months at which time the vehicle would not be paid off" was a deceptive act or unfair practice under the FDUTPA.

The testimony and documents presented at the evidentiary hearing show that the plaintiffs entered into a transaction with the defendants believing they would be able to repurchase their home for $130,000.00. Instead, the plaintiffs learned several months later when they tried to obtain a mortgage through Quick Loan that the current mortgage on the subject property was $165,000. The plaintiffs further learned through HUD that their home had actually been sold for $185,000.00, with $39,961.42 ($58,646.72 less $13,685.30 in reimbursement for arrearages less $5,000 paid to the plaintiffs) in cash and credit going directly to Mrs. Torres. Moreover, it is clear that the plaintiffs suffered damages, including the loss of home ownership and the loss of a substantial portion of the sales proceeds because of the defendants' actions. As such, the plaintiffs have demonstrated a substantial likelihood of success on the merits of their FDUPTA claim.

**2.      Irreparable Injury**

For purposes of a preliminary injunction, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1447 (11th Cir.1991) (citation omitted). Here, the plaintiffs have shown that they will suffer irreparable injury if Mrs. Torres is allowed to evict them from the subject property.

An "irreparable injury is suffered when one is wrongfully ejected from his home." Johnson v. United States Department of Agriculture, 734 F.2d 774, 789 (11th Cir. 1984). Although the plaintiffs could potentially contribute between $500 and $600 toward rent, they will still nonetheless suffer irreparable injury if evicted.  "Real property and especially a home is unique." Id. Thus, the plaintiffs could not be adequately compensated for being wrongfully removed from the home through money damages. "It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury." United Church of the Medical Ctr. v. Medical Ctr. Comm'n, 689 F.2d 693, 701 (7th Cir.1982); see also Brown v. Artery Organ., Inc., 654 F.Supp. 1106, 1118-19 (D.D.C.1987) (noting that wrongful eviction constitutes irreparable harm because of relocation costs, difficulty in commuting from a new location, additional time needed, potentiality for homelessness); Hruby v. Larsen, No. Civ. 05-894, 2005 WL 1540130, 4 (D. Minn. Jun. 30, 2005) (observing that "i[f denying an injunction results in eviction, then the irreparable harm element is likely met.").

### 3.     The Balance of Hardships

The balance of hardships favors the issuance of a preliminary injunction. The undersigned finds that the Torreses will suffer no real financial hardship in continuing to make the mortgage payments because Mrs. Torres sufficiently benefitted from purchasing the subject property to adequately cover these payments through trial. By contrast, the plaintiffs will suffer real and substantial harm if they are wrongfully evicted from their home.

In Hruby v. Larsen, No. Civ. 05-894, 2005 WL 1540130, 4 (D. Minn. Jun. 30, 2005), the court determined that "that the balance of harms tipp[ed] in favor of the [plaintiffs] and the issuance of an injunction" where "the [plaintiffs] risked losing their home and having their lives substantially disrupted" whereas "the [defendants] may be unable to receive rental or other income from the property until the matter [wa]s resolved." Here, the balance of hardships similarly weighs heavily in favor of the plaintiffs because the defendants have suffered no out of pocket expenses.

Mrs. Torres realized a monetary gain of **$39,961.42** ($58,646.72 minus $13,685.30 in reimbursement for arrearages and $5,000 paid to the plaintiffs) in purchasing the plaintiffs' property. As of the date of the evidentiary hearing, the plaintiffs have not made their lease payments for 17 months.[6] The amount owed to Mrs. Torres in outstanding lease payments is $26,248.00 ($1,544 for 17 months). Thus, to

---

[6] Notably, in the three day notice dated January 9, 2007, Mrs. Torres indicated that the plaintiffs owed $15,440.00 in unpaid rent. See Ex. D, Motion to Dismiss (DE# 60, 2/16/07). By these calculations, the plaintiffs owe $18,528.00 in rent payments as of March 1, 2007.

date, the defendants have not incurred any losses. This case is presently set for the two-week trial calendar beginning August 20, 2007. At that time, the amount of unpaid lease payments will total $33,968.00 ($1,544 for 22 months). This is still $5,993.42 **less** than the total cash and credit received by Mrs. Torres. Accordingly, even if the plaintiffs continue to live "rent free" on the subject property through trial, Mrs. Torres will incur no out of pocket expenses.

By contrast, the plaintiffs will suffer real and substantial hardship if this Court does not issue a preliminary injunction and they are wrongfully evicted from the subject property. "It is well recognized that real property is unique and not fungible. A person's home has even more intangible value." Johnson, 734 F.2d at 788 (11th Cir. 1984).

As such, any harm to the defendants that could result from the issuance of a preliminary injunction preventing Mrs. Torres from evicting the plaintiffs and discontinuing the mortgage payments on the subject property is significantly outweighed by the real and substantial harm the plaintiffs would suffer if they and their two minor children were wrongfully evicted from their home.

**4.     Public Interest**

The public interest weighs in favor of granting injunctive relief. In Hruby, 2005 WL 1540130 at 5, the court recognized that "[a]lthough the public interest does support the payment of debts, . . . it weighs more in favor of protecting people who are threatened with eviction as a result of potentially unlawful transactions." Similarly there is a strong public interest in ensuring that the plaintiffs are not wrongfully evicted from their home.

## **CONCLUSION**

In accordance with the foregoing Report and Recommendation, it is respectfully **RECOMMENDED** that the plaintiffs' Motion for Preliminary Injunction (DE # 48, 1/11/07) be **GRANTED** and the defendants' Motion to Dismiss be **DENIED**. The parties may serve and file written objections to this Report and Recommendation with the Honorable Judge Donald L. Graham, United States District Judge, within ten (10) days of receipt.  See 28 U.S.C. § 636(b)(1)(c); United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982).

DONE AND ORDERED, in Chambers, at Miami, Florida, **20th** day of March, 2007.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:

United States District Judge Graham
All counsel on record